Eugene **BURNS**, John Mutsko, Roy Plummer, Louis Beaujon, Ron Snyder and Evelyn Ardini, Plaintiffs,

v.

**COUNTY OF CAMBRIA, PENNSYLVANIA; Cambria County Salary Board; Joseph P. Roberts, Ron Stephenson and T.T. Metzger, Jr., individually and as Cambria County Board of Commissioners and Members of Cambria County Salary Board; Robert McCormick, individually and as Cambria County Controller and Member of the Cambria County Salary Board; Thomas Burns, individually, and Acting Sheriff and Member of the Salary Board of Cambria County; Jay Roberts, individually, and as Sheriff of Cambria County; Laurel Crest Manor; Wendell P. Davis, individually and as Administrator of Laurel Crest Manor; and Jeffrey Saintz, individually, and as Personnel Director of Cambria County; Defendants.**

Civ. A. No. 87–2606.

United States District Court, W.D. Pennsylvania.

June 4, 1991.

William C. Andrews, Maiello, Andrews & Price, Pittsburgh, Pa., for plaintiffs.

Dino S. Persio, Ebensburg, Pa., David R. Johnson, Thomson, Rhodes & Cowie, Pittsburgh, Pa., Alex E. Echard, Mt. Pleasant, Pa., Dennis J. Clark, Plunkett & Coonoy, Detroit, Mich., Tom Livington, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Plaintiffs have filed a Complaint alleging that the defendants conspired to discharge them from their respective employment positions for exercising their rights under the First and Fourteenth Amendments of the Constitution of the United States. Plaintiffs, Eugene Burns (Burns), John Mutsko (Mutsko), Roy Plummer (Plummer), and Louis Beaujon [1] (Beaujon) were Deputy Sheriffs of Cambria County. Plaintiff, Ron Snyder (Snyder), was employed as a clerk/investigator [2] in the Cambria County Public Defender's Office, but his wages were paid by the Cambria County Sheriff Department. Plaintiff, Evelyn Ardini (Ardini), was employed as a paramedic, and coordinator of patient transportation for defendant, Laurel Crest Manor (Laurel Crest), an agency of Cambria County.

At Count I of the Complaint, the plaintiffs have alleged that their respective employments were terminated because they opposed, and/or failed to support the candidacy of defendant, Jay Roberts, for County Sheriff.

At Count IV [3] of the Complaint, Ardini has alleged defendants refused to grant her individual pre-termination hearings, on

---

1. Beaujon was a per diem employee of the Sheriff's Office and was simply not called in to work after Jay Roberts took office as County Sheriff.

2. Though Snyder was not a deputy sheriff, he acknowledges that he was sworn in as a deputy one time for approximately three (3) hours, and from 1972 to February, 1985, he performed all the functions and duties of a deputy sheriff. (See Snyder Deposition Pages 40–48)

3. Pursuant to Motions to Dismiss, the Honorable Donald E. Ziegler dismissed Counts II, III and VI by Order and Opinion dated May 3, 1988. Count IV was dismissed as to the claims of Burns, Mutsko, Beaujon, Plummer and Snyder.

the issue of her discharge, in violation of her procedural due process rights under the Fourteenth amendment.

At Count V, Ardini has alleged she was terminated and replaced with a man, and she was constantly subjected to sexually discriminatory remarks from defendants and defendants' agents.

The defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons below stated, defendants' motions shall be granted in part and denied in part.

In interpreting Rule 56(c), the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) has ruled that:

"The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552.

An issue of material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Incorporated*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying for the Court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. To overcome the movant's assertion that there is no material issue of fact, the opposing party must point to specific evidence. *Williams v. Borough of West Chester*, 891 F.2d 458, 463–64 (3d Cir.1989).

## FACTS

Eugene Burns, among others, opposed defendant Jay Roberts in the 1985 Democratic Primary for Cambria County Sheriff. At that time, Burns was employed as a deputy sheriff of Cambria County. Burns placed second in the final ballot, and Jay Roberts (Sheriff Roberts) was elected as Sheriff of Cambria County in the general election in November of 1985.

Prior to his installation in office, Sheriff Roberts instructed the Cambria County Salary Board (Salary Board) to take administrative action and remove plaintiffs, Burns, Mutsko, Plummer and Snyder from the Sheriff's Office Payroll. At the Salary Board's meeting of January 2, 1986, upon motion of defendant, Stephenson, seconded by defendant McCormick, and approved unanimously, Burns, Mutsko, Plummer and Snyder were removed from the payroll of the Office of Sheriff. Sheriff Roberts was installed into office on January 6, 1986, and filed written revocation of Burns, Mutsko, Plummer and Snyder as sheriff deputies. Sheriff Roberts did not schedule a call for work for Beaujon, who was a part-time employee.

The plaintiffs contend Burns was dismissed because he ran against Sheriff Roberts; Mutsko, Plummer and Beaujon were dismissed for their support of Burns' candidacy; and Snyder was dismissed for his failure to dissuade Burns from running for Sheriff.

Plaintiff Ardini alleges that prior to the election she was approached by both Sheriff Roberts and his father Joseph Roberts, who was also a Cambria County Commissioner, with regard to her supervisor at Laurel Crest Manor, William Tomallo (Tomallo). Tomallo was also a candidate for Sheriff. Joseph Roberts allegedly asked Ardini if she heard any phone calls that Tomallo received at Laurel Crest. Ardini answered in the affirmative, and Joseph Roberts stated he would like a list of the persons who called Tomallo. Ardini contends that Joseph Roberts made the same request a month or two later. Ardini never complied, and she was fired in December of 1985.

## COUNT I

a) Qualified Immunity

Defendants, Sheriff Roberts and Commissioner Joseph Roberts, contend

they are immune from civil liability for any action or alleged action undertaken in their individual and/or official capacities. Government officials are entitled to qualified immunity for liability for damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Mitchell v. Forsyth*, 472 U.S. 511, 517, 105 S.Ct. 2806, 2810–11, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1980). The judicially-created doctrine balances the interest in vindicating constitutional rights which have been violated by public officials against the interest in allowing public officials to perform their discretionary duties without fear of disruptive lawsuits and personal liability in money damages. *Hynson v. City of Chester*, 864 F.2d 1026, 1031 (3d Cir.1988); *see Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■ A government official will be denied qualified immunity for having violated a clearly established right when "in light of preexisting law the unlawfulness [is] apparent." *Anderson*, 107 S.Ct. at 3039. The state of the law must be considered at the time of the challenged action. *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816–17. The grant of qualified immunity to the defendants properly depends upon whether the plaintiffs' right to be free from politically based firings was clearly established.

In *People of Three Mile Island v. Nuclear Reg. Comm'rs*, 747 F.2d 139 (3d Cir. 1984), the Court addressed the issue of analogous precedent in the context of ascertaining "clearly established" law for the purposes of the qualified immunity defense, and rejected a requirement of strict factual identity. Instead, the Third Circuit

adopted a more balanced approach which required:

> ... some but not precise factual correspondence and demanding that officials apply general, well developed legal principles ... While we cannot expect executive officials to anticipate the evolution of constitutional law, neither can we be faithful to the purposes of immunity by permitting such officials one liability-free violation of a constitutional or statutory requirement ... Moreover, requiring officials to consider the legal implications of their actions should have a salutary effect.

*Id.* at 144–45.

The Third Circuit in *Bennis v. Gable*, 823 F.2d 723 (3d Cir.1987) specifically concluded that as of 1982 the law was "clearly established" that a public employee could not be discharged, transferred, demoted or reprimanded in retaliation for exercising his rights under the First Amendment. In this regard the defendants' position is untenable.

Sheriff Roberts contends that he could not reasonably have been expected to know that his actions could be violative of the law, since the clear statutory language of 16 Pa.S.A. §§ 1203 and 1205.[4] afforded him the power to revoke appointments at his "pleasure." Sheriff Roberts further points to his request for a legal opinion from the Cambria County Personnel Office[5] as evidence of his reasonable belief he was acting within the law. Defendant cites *Lee v. Mihalich*, 847 F.2d 66 (3d Cir. 1988) as authority for the reasonable reliance upon an opinion of counsel. In *Lee*, the law pertaining to the Pennsylvania statute of limitations was unclear, that is not the case here.

---

**4.** Section 1203 in pertinent part provides:
The sheriff of each county shall appoint ... a chief deputy, whose appointment shall be revocable at pleasure on recording ... a signed revocation thereof...
Section 1205 in pertinent part provides:
The sheriff of each county may appoint such deputies and clerks as may be necessary ... He may revoke the appointment of deputies in the same manner as his chief deputy ...

**5.** Such opinion merely reiterated the statutory language of 16 Pa.S.A. §§ 1203 and 1205, and mentioned the effect of such statutes on the County Labor Agreement. There is no mention of the effects of Sections 1203 and 1205 upon the rights secured by the Constitution of the United States.

 It is the objective reasonableness of a defendant's actions that governs; what the defendant actually believed or did not believe is irrelevant to the qualified immunity analysis. *Anderson,* 107 S.Ct. at 3034. Because the law was clearly established as of 1982, this Court is not inclined to believe that a reasonable jury would elevate state statutory language above the rights afforded by the United States Constitution. As a matter of law, we fail to find the existence of a qualified immunity for defendants.

b) 42 U.S.C. § 1983—Violation of First Amendment

In order to establish a claim under § 1983, plaintiffs must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution of the United States." *Robb v. City of Philadelphia,* 733 F.2d 286, 290–91 (3d Cir.1984).

 In actions arising out of termination of public employment based on allegations of conduct protected by the First Amendment, the burden is on the plaintiff to establish that the protected activity was a "substantial" or "motivating" factor in the termination. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Brown v. Reardon,* 770 F.2d 896, 905 (10th Cir.1985); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981). The Third Circuit in *Commonwealth Bank & Trust v. Russell,* 825 F.2d 12, 14 (3d Cir.1987), stated that § 1983 requires a plaintiff to prove the constitutional deprivation is "fairly attributable" to the defendant's conduct.

 Looking at the claims of the individual plaintiffs, we find that material issues of fact exist as to whether the plaintiffs' political activities were "substantial" or "motivating" factors in the termination of all plaintiffs except Ronald Snyder. It is undisputed in the record that Snyder was a convicted felon. He readily admits that he pleaded guilty to burglary twice and to robbery once, and was incarcerated on two of those occasions. Under 16 Pa.S.A. § 1206, Snyder is unable to hold the position of deputy sheriff. In addition, Snyder has admitted that he actually campaigned for Sheriff Roberts, and tried to dissuade Burns from entering the election. Based on the above, Summary judgment shall be granted on behalf of the defendants and against Snyder.

Having determined that a material issue of fact exists as to whether plaintiffs were discharged because they engaged in protected activity, the Court must determine whether, even if they were discharged based upon protected activity, were such discharges legal.

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court proscribed the dismissal of public employees based upon his or her political beliefs. Despite prohibition on patronage practices, the First Amendment permits some patronage discharges. The Supreme Court allowed the dismissal of employees who are likely to be formulating and implementing the policies of the party in power for lacking the correct political affiliation. The theory is that a newly elected administration has a legitimate interest in implementing the broad policies it was elected to implement without interference from disloyal employees. *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686–87. *Elrod* thus distinguishes employees who are either "policymaking" or "confidential" from non-policymaking, non-confidential employees. The former can be dismissed for their political beliefs, but the latter cannot.

The Supreme Court revised the standard set in *Elrod* four years later in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. The focus of the Third Circuit is whether the employee has meaningful input into decision making concerning the nature and scope of a major program. *Furlong v. Gudknecht,* 808 F.2d 233, 235 (3d Cir.1986).

This matter is not a strict party patronage hiring or firing case. Because the allegations of the plaintiffs arise from Burns' candidacy and the support of such candidacy, or the failure to support Sheriff Roberts' candidacy, and not from substantial political differences among the litigants, this matter is akin to the political speech cases. It must, therefore, be determined whether the fact that the litigants were campaign contestants would adversely affect performance of the Sheriff's Office.

 Plaintiff, Burns, was a candidate for Sheriff, adverse to the candidacy of Sheriff Roberts. The selection of Sheriff Roberts is based significantly on the popular approval of his political agenda. Burns' active opposition to Sheriff Roberts and his political agenda could make Burns appear hostile and unreliable, to the voting public, in carrying out the policies of the newly elected Sheriff. Because the sheriff depends on the performance of his deputies in carrying out the duties of the office, it is realistic for the sheriff to consider outright opposition to his candidacy a threat to the proper function of the Sheriff's Office. In a small department, a Sheriff's core group of advisers is likely to include his deputies. Burns' candidacy in opposition to Sheriff Roberts is a situation which, this Court finds, falls within the *Elrod* and *Branti* exceptions to the proscription of political affiliation discharges.

Because the discharge of Burns is not prohibited under the First Amendment, summary judgment will be granted in favor of defendants and against plaintiff, Eugene Burns.

Whether the campaign involvement of the remaining deputy plaintiffs was such that the operation of the Sheriff's Office would be adversely affected by such cannot be determined as a matter of law. Political

loyalty as a requirement to the maintenance of the position of deputy sheriff is determinable upon the reflection on the functions performed by a particular occupant of that office.

 As far as Ardini is concerned, we find her political affiliation to be of no significance to the operation of the Sheriff's Office or to the operation of Laurel Crest Manor. We find, therefore, her discharge to be outside the exceptions of *Elrod* and *Branti.*

Looking at the record in a light most favorable to the nonmoving parties and giving such parties the benefit of all favorable inferences drawn from the evidence, the Court now turns to the matter of determining which defendants acted under color of state law and/or whether their conduct "fairly attributed" to the constitutional deprivations of the plaintiffs.

c) Cambria County Salary Board and Cambria County Commissioners

 The defendants assert that because neither the Salary Board nor the County Commissioners had authority to hire or fire the deputy sheriffs, they are entitled to summary judgment. Notwithstanding the Salary Board's and Commissioners' lack of statutory authority, they may be held liable for their actions. See *Bennis v. Gable,* 823 F.2d 723 (3rd Cir. 1987) at footnote 11. In *Bartholomew v. Fischl,* 782 F.2d 1148 (3d Cir.1986), the Third Circuit held that allegations that policy-making officials, without specific statutory authority to discharge, had conducted a retaliatory campaign against public employees in order to suppress free speech was sufficient to establish a cause of action under the Civil Rights Statute.

Based upon our findings above that material issues of fact exist as to whether plaintiffs' political activities were motivating factors in their dismissals, and because the plaintiffs allege a conspiracy among the defendants, the Motions for Summary Judgment of the Salary Board, the Com-

missioners and their individual members[6] shall be denied as to all remaining plaintiffs.

### d) Wendell Davis

Defendant, Davis, was an employee of DECA, a managing company hired by Cambria County to operate Laurel Crest Manor. Davis, as Administrator of Laurel Crest, was responsible for the operation of Laurel Crest and reported directly to the County Board of Commissioners. Because he was employed by a private company, defendant claims he is not subject to the § 1983 claims because he could not act under color of state law.

■ The Supreme Court has held that a private citizen acting in concert with public officials to deprive others of constitutional rights is also acting "under color" of state law for purposes of § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Also see Jennings v. Shuman*, 567 F.2d 1213 (3d Cir.1977). With regard to plaintiff, Ardini, there is sufficient evidence to show an existence of a material issue of fact regarding whether Davis acted in concert with state officials to deprive Ardini of constitutional rights. As to Ardini's § 1983 claim, Davis' Motion for Summary Judgment fails.

■ With regard to the deputy sheriff plaintiffs, however, Davis' Motion for Summary Judgment will be granted. Though there is evidence of Davis' political activity, that alone does not show a nexus between his actions and the dismissal of the deputies. This Court is unable to find any evidence indicating that the constitution deprivations claimed by the deputies are "fairly attributable" to Davis' conduct.

### e) Jeffrey Saintz and Laurel Crest Manor[7]

■ Defendant, Saintz, was the Personnel Director for all of Cambria County and Laurel Crest Manor. Defendant contends that he is entitled to summary judgment because he had no input in the dismissals of the plaintiffs. In conjunction with our analysis of defendant Davis' contentions, we find that the actions of Saintz to be insufficiently related to the discharge of the deputies, and summary judgment will be granted as to their claims.

■ With regard to plaintiff, Ardini, there is sufficient evidence to show an existence of a material issue of fact regarding whether Saintz acted to deprive Ardini of constitutional rights. As to Ardini's § 1983 claim, Saintz' Motion for Summary Judgment will be denied.

### f) Cambria County

■ Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order for a local governing body to be sued directly under § 1983, it must be shown that such constitutional deprivations were pursuant to a governmental custom or policy. Such custom or policy need not receive formal approval through the government's official decision making channels. There exists a material issue of fact as to whether a custom or policy existed in Cambria County regarding politically motivated firings. The Motion for Summary Judgment on behalf of Cambria County shall be denied.

### g) Jay Roberts

■ Jay Roberts, along with his father, Commissioner Joseph P. Roberts, were the prime movers in all of the alleged politically motivated discharges. There exists material issues of fact as to Sheriff Roberts' role in the alleged deprivations, and as such summary judgment against the remaining plaintiffs on the § 1983 action shall be denied.

### COUNT IV

At Count IV, Ardini has alleged defendants refused to grant her individual pre-

---

**6.** Such individual members include: Joseph P. Roberts, Ron Stephenson, T.T. Metzger, Jr., Robert McCormick, and Thomas Burns.

**7.** Defendant Laurel Crest Manor has set forth no argument as to why summary judgment should be entered on its behalf. As such, summary judgment will not be granted on its behalf.

termination hearings, on the issue of her discharge, in violation of her procedural due process rights under the Fourteenth amendment.

 A plaintiff is entitled to a pre-determination hearing where she has a right to, or a property interest in, continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1970); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The issue of whether an employee has a property interest in employment is to be decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Ardini relies upon *DeFrank v. County of Greene,* 50 Pa.Comm.Ct. 30, 412 A.2d 663 (1981) and *Appeal of Colban,* 58 Pa. Comm.Ct. 104, 427 A.2d 313 (1981) for the proposition that provisions in an employee handbook or manual are a form of guarantee of employment. In *DeFrank,* a discharged county employee argued that the County was estopped from denying the validity of the procedures for discharge set forth in its personnel manual and the Commonwealth Court agreed. In the case at bar, there is no such procedure set forth in the Laurel Crest Manor Employee Booklet. We, therefore, do not find *DeFrank* to be applicable.

In *Colban,* the Commonwealth Court held that the discharge procedure contained in the county's employee handbook was "a form of guarantee of employment during unoffending conduct or until after being thrice warned of a minor infraction." *Id.* at 107, 427 A.2d at 314. The court did not hold that the employee handbook was a contract granting the employee a property right in his employment. *See Pivarnik v. Commonwealth, Department of Transportation,* 82 Pa.Comm.Ct. 42, 474 A.2d 732, 735 (1984). Again, we do not have a discharge procedure outlined in Laurel Crest Manor Employee Booklet.

 As a rule, public employees in Pennsylvania have at-will status and are subject to summary removal by the employing agency. *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d

278 (1960); *Cooley v. Pennsylvania Housing Finance Agency,* 830 F.2d 469 (3d Cir. 1987). The court in *Abraham v. Pekarski,* 537 F.Supp. 858 (E.D.Pa.1982), *affirmed in part,* 728 F.2d 167 (3d Cir.1984), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984) noted that the general test for a property right vesting in a public employee is whether there was an enforceable expectation of continued employment.

 Ardini bases her claim of a property right in her employment on the employment booklet. Based upon the holdings in *Scott, Pivarnik,* and *Cooley,* this Court finds that no such property interest exists. The employee booklet merely serves as a guideline for the employees and acceptance of it cannot be construed as creating a contractual relationship between the county agency and its employees. Whether or not a public employee has a property right in his employment is "a matter of legislative grace." *Scott,* 402 Pa. at 154, 166 A.2d at 280. Summary judgment shall be granted on Count IV against Ardini and in favor of all defendants.

## COUNT V

At Count V, Ardini has alleged she was terminated and replaced with a man, and she was constantly subjected to sexually discriminatory remarks from defendants and defendants' agents. Count V was dismissed as to defendant Jay Roberts by order of the Honorable Donald E. Ziegler on May 3, 1988, but was allowed to go forward against the remaining defendants.

 Under § 1983, in order to prove a violation of her right to equal protection, Ardini must show the existence of "purposeful discrimination." *Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986). An equal protection claim arises when an individual contends that he or she is receiving different treatment than that received by other individuals similarly situated. *Kuhar v. Greensburg–Salem School District,* 616 F.2d 676, 677 n. 1 (3d Cir.1980). To prevail, Ardini need not establish a pattern of official discrimination, but a single incident of dis-

crimination could suffice to support such a claim. *Batson,* 476 U.S. at 95, 106 S.Ct. at 1722.

With regard to the liability of Ardini's supervisors, Davis and Saintz, the Supreme Court has held that supervisory officials do not violate constitutional rights of victims unless they have played an "affirmative part" in the misconduct. *Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). The Third Circuit has found that liability as a result of supervisory inaction could be imposed when there is: (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) circumstances under which the supervisor's inaction could be found to communicate a message of approval to the offending subordinate. *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 673 (3d Cir.1988); *see also Freedman v. City of Allentown,* 853 F.2d 1111, 1116–17 (3d Cir.1988).

█ To support her claims, Ardini alleges: (1) After her termination she was replaced by a man, Mr. Schreyer; (2) Schreyer would tell her she could not do things as well as a man; (3) Schreyer told her she would be replaced by a man; and (4) Mr. Tomallo, her immediate supervisor, who is not a defendant in this lawsuit, allegedly told Ardini she could do certain things better because she was a woman, such as mouth-to-mouth resuscitation in that she has a bigger chest. We fail to find that such allegations rise to the level of "purposeful discrimination."

The only allegation against a supervisor is that against Tomallo, and he is not a named defendant. Ardini fails to connect any of the defendants with the sexual discriminatory remarks directly or indirectly. Nor is Ardini able to meet the criteria of *Colburn* necessary to impose supervisory liability due to inaction. This Court, finds, therefore, the claims of sexual discrimination against defendants Davis and Saintz must fail.

Ardini's claims against the remaining individual defendants also fail for lack of supporting evidence. Failing to find liability on the part of any of the individual

defendants, Ardini's claim against the County of Cambria and/or the county agencies must also fail.

Summary judgment on behalf of all defendants shall be granted against Ardini with regard to her allegations of violations of § 1983 due to sexual discrimination under Count V of the Complaint.

An appropriate order shall follow.

### ORDER OF COURT

AND NOW, this 4th day of June 1991, upon consideration of defendants' Motions for Summary Judgment, and the plaintiffs' response thereto, it is hereby

ORDERED as follows:

1. Summary Judgment on behalf of defendants, County of Cambria; Cambria County Salary Board; Joseph P. Roberts, Ron Stephenson, T.T. Metzger, Jr., individually and as Cambria County Board of Commissioners and members of the Cambria County Salary Board; Robert McCormick, individually and as Cambria County Controller and member of the Cambria County Salary Board; Thomas Burns, individually and as Acting Sheriff and member of the Cambria County Salary Board; and Jay Roberts, individually, and as Sheriff of Cambria County, is, hereby:

 (a) With regard to Count I, GRANTED as to plaintiffs, Eugene Burns and Ron Snyder, and DENIED as to plaintiffs, John Mutsko, Louis Beaujon, Roy Plummer, and Evelyn Ardini;

 (b) With regard to Count IV, GRANTED; and

 (c) With regard to Count V, GRANTED.

2. Summary Judgment on behalf of defendants, Laurel Crest Manor; Wendell Davis, individually and as Administrator of Laurel Crest Manor; and Jeffrey Saintz, individually, and as Personnel Director of Cambria County, is, hereby:

 (a) With regard to Count I, GRANTED as to plaintiffs, Eugene Burns, Ron Snyder, John Mutsko, Louis Beaujon, and Roy Plummer, and DENIED as to plaintiff, Evelyn Ardini;

**1042**

(b) With regard to Count IV, GRANTED; and

(c) With regard to Count V, GRANTED.

IN SUMMARY, Count I of the Complaint is the only viable cause of action remaining and the complainants align as follows:

(a) Plaintiffs, John Mutsko, Louis Beaujon and Roy Plummer against defendants, County of Cambria; Cambria County Salary Board; Joseph P. Roberts, Ron Stephenson, T.T. Metzger, Jr., individually and as Cambria County Board of Commissioners and members of the Cambria County Salary Board; Robert McCormick, individually and as Cambria County Controller and member of the Cambria County Salary Board; Thomas Burns, individually and as Acting Sheriff and member of the Cambria County Salary Board; and Jay Roberts, individually, and as Sheriff of Cambria County; and

(b) Plaintiff, Evelyn Ardini against defendants, County of Cambria; Cambria County Salary Board; Joseph P. Roberts, Ron Stephenson, T.T. Metzger, Jr., individually and as Cambria County Board of Commissioners and members of the Cambria County Salary Board; Robert McCormick, individually and as Cambria County Controller and member of the Cambria County Salary Board; Thomas Burns, individually and as Acting Sheriff and member of the Cambria County Salary Board; and Jay Roberts, individually, and as Sheriff of Cambria County; Laurel Crest Manor; Wendell Davis, individually and as Administrator of Laurel Crest Manor; and Jeffrey Saintz, individually, and as Personnel Director of Cambria County.