**Charles E. SHOEMAKER, Plaintiff**

v.

**CITY OF LOCK HAVEN, et al., Defendants**

No. 4:CV–94–2017.

United States District Court, M.D. Pennsylvania.

Oct. 24, 1995.

Frank J. Lavery, Lavery & Kain, Harrisburg, PA, for Plaintiff.

Robert E. Durrant, Vicki L. Beatty, and Robert W. Cameron, Pittsburgh, PA, for Defendants.

*MEMORANDUM*

McCLURE, District Judge.

**BACKGROUND**

Plaintiff Charles E. Shoemaker alleges in this section 1983 action[1] that his removal as Chief of Police of the City of Lock Haven, Pennsylvania (Lock Haven or the city) was a violation of his civil rights.

Plaintiff was promoted to the position of Chief of Police on a probationary basis on December 6, 1993. He signed an "Employment Agreement" with the city which provid-

1. 42 U.S.C. § 1983.

ed that: 1) he would be employed by the city as Chief of Police until January 1, 1996; 2) he would complete a six-month probationary period during which time he could be removed from the position for just cause and would receive three months' severance pay; 3) if he successfully completed the probationary period, he could thereafter be removed from his position prior to the January 1, 1996 contract expiration date only upon mutual agreement of the parties in writing or if he were convicted of a felony; and 4) if he were removed from the position of Chief of Police, he would be reassigned to detective status. (Plaintiff's complaint, exhibit "A").

Plaintiff alleges that he was removed as Chief of Police because he refused to go along with alleged requests by city officials to cancel or "fix" parking tickets issued during commencement weekend to individuals parked illegally near the Lock Haven University campus and for expressing his disagreement with city officials' proposal that the tickets be cancelled and no fines imposed on the individuals ticketed.

Plaintiff brings this action against the City of Lock Haven; the Lock Haven City Council, Robert A. Edmonston, June L. Houser, Diann H. Stuemplfle, Joseph L. Sanders, III, Harold C. Yost, Jr., Robert S. Bravard, Alfred E. Hobeman and Paul Cornell.

Plaintiff alleges: 1) the violation of his First and Fourteenth Amendment rights (Count I); 2) claims of substantive due process and equal protection under the Fourteenth Amendment (Count II); 3) a procedural due process claim under the Fourteenth Amendment (Count III); 4) a conspiracy claim under section 1983 (Count IV); and 5) a pendent state claim for the violation of Pennsylvania Local Agency Law, 2 Pa.Cons. Stat.Ann. §§ 101 *et seq.* (Count V). He seeks compensatory and punitive damages and injunctive relief in the form of reinstatement to his former position.

Defendants move to dismiss Counts II through V of plaintiff's complaint for failure to state a cause of action. There is no motion before the court to dismiss Count I.

For the reasons which follow, we will enter an order granting defendants' motion in part and dismissing Counts II, III and V. Counts I and IV remain in the case, as does plaintiff's claim for punitive damages.

### Rule 12(b)(6) motion

 In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parties of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### Asserted property interest in remaining Chief of Police

The claims asserted in Counts II, III and V of plaintiff's complaint rise or fall on plaintiff's ability to demonstrate a property interest under Pennsylvania law in remaining Chief of Police. In view of the overarching significance of that issue, we address it first.

 Establishing a property interest requires a showing that the plaintiff has "a legitimate claim of entitlement" in the position or rights which he claims were denied him. *Fratantaro v. Kepler*, 1992 WL 6754 at \*3 (E.D.Pa. Jan. 14, 1992), citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It requires something more than a showing of expectation or desire. *Id.*

 As a general rule, municipal employees in Pennsylvania are employees at-will. The municipality that hires them has the right to terminate their employment for any or no reason so long as the motives are not discriminatory under federal or state law. *Fratantaro*, 1992 WL 6754 at \*3, citing *Burns v. County of Cambria*, 764 F.Supp. 1031, 1040 (W.D.Pa.1991), 971 F.2d 1015 (3d Cir.1992), *cert. denied sub nom, Roberts v.*

*Mutsko*, —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). At-will employees can demonstrate a property interest in retaining their jobs only by showing an enforceable expectation of continued employment, *Abraham v. Pekarski*, 537 F.Supp. 858 (E.D.Pa. 1982), *aff'd in part*, 728 F.2d 167 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984), or "'some form of guarantee'" of continued employment extended by the employing municipality. *Appeal of Colban*, 58 Pa.Cmwlth. 104, 427 A.2d 313 (1981), citing *McCorkle v. Bellefonte Area Board of School Directors*, 41 Pa.Cmwlth. 581, 401 A.2d 371, 374 (1979) and *Fair v. Delaney*, 35 Pa.Cmwlth. 103, 385 A.2d 601 (1978).

Shoemaker bases his claim of a property interest on the terms of his employment agreement with the city. The agreement provided that during the probationary period, he could be demoted only for "just cause." (Plaintiff's complaint, exhibit "A"). This guarantee, he claims, gave him a legitimate expectation that he would remain Chief of Police absent "just cause" for his demotion.

Were it not for the fact that we find the agreement unenforceable for the reasons discussed below, we would agree with the plaintiff and have no difficulty finding that he had the requisite property interest in remaining Chief of Police. See: *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir.1991) (finding that a property interest may arise where a state entity can terminate employment only for cause). Cf. *Sasko v. Charleroi Area School District*, 121 Pa.Cmwlth. 220, 550 A.2d 296, 299 (1988).

 Citing *Bolduc v. Board of Supervisors of Lower Paxton Township*, 152 Pa. Cmwlth. 248, 618 A.2d 1188 (1992), *appeal denied*, 533 Pa. 662, 625 A.2d 1195 (1993), defendants argue that plaintiff's employment contract with the city was void from the outset to the extent that it guaranteed him a right to remain Chief of Police for a specified period. See also: 53 Pa.Stat.Ann. tit. 53, §§ 37002 and 41305. Defendants argue that the city has no authority under Pennsylvania law to extend such a commitment, and that

the city's promise of continued employment is void and unenforceable under Pennsylvania law.

■ It is true, as defendants argue, that in Pennsylvania, a public employer, in this case, the City of Lock Haven, has the authority to enter into an employment agreement for a time certain only if the Pennsylvania legislature has authorized it to do so. Otherwise, such authority is absent, and a purported promise of employment for a definite period is unenforceable. *Bolduc*, 618 A.2d at 1190, citing *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960) and *Mahoney v. Philadelphia Housing Authority*, 13 Pa.Cmwlth. 243, 320 A.2d 459 (1974) (absent authorization in the Housing Authorities Law, Pa.Stat.Ann. tit. 35, §§ 1541 *et seq.* to create tenure by contract, housing authority employees could be dismissed without cause or prior notice, despite existence of a personnel policy that dismissals would occur only for cause and after notice), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). See also: *Abraham v. Pekarski*, 537 F.Supp. 858 (E.D.Pa.1982), *aff'd in part*, 728 F.2d 167 (3d Cir.1984), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984) (at will employment relationship inconsistent with a property right based upon an enforceable expectation of continued employment).

■ Authority to contract for employment for a time certain must be expressly granted by the Pennsylvania legislature. *Cooley v. Pennsylvania Housing Finance Agency*, 830 F.2d 469, 471 (3d Cir.1987); *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 658 A.2d 333, 334 (1995) and *Pivarnik v. Commonwealth, Department of Transportation*, 82 Pa.Cmwlth. 42, 474 A.2d 732, 734 (1984). A general grant, for example, of such powers as are necessary to carry out essential functions of the municipality is insufficient. For examples of sufficiently specific grants of authority, see, e.g., the Civil Service Act, Pa.Stat.Ann. tit. 71, §§ 741.1–741.1005; the Public Employees Relations Act, 43 Pa.Cons.Stat.Ann. §§ 1101.101–1101.2301; and the teachers tenure provisions of the Public School Code of 1949, as amended, 24 Pa.Cons.Stat.Ann. §§ 11–1121–11–1141.

The Pennsylvania Supreme Court held in *Scott* that a grant of broad general powers in the enabling legislation of the Philadelphia Parking Authority, 53 P.S. §§ 341–356, was insufficient to give it the right to contract with employees for a term certain. On that basis, the court held unenforceable an authority employee's purported contract for employment for a time certain.

The Third Circuit Court of Appeals reached the same conclusion with respect to an employee of the Pennsylvania Housing Finance Agency (PHFA) in *Cooley*, 830 F.2d at 471. The court held insufficiently specific general provisions in the agency's enabling legislation, 35 Pa.Cons.Stat.Ann. § 1680.101 *et seq.*, and, on that basis, ruled that the plaintiff had no enforceable right to continued employment with the agency. Although the enabling legislation specifically authorized PHFA to "enter into contracts of all kinds and to execute all instruments necessary or convenient for carrying on its operations ... [e]mploy an executive director and other officers, agents, employees, professional and business advisors as may from time to time be necessary in its judgment and to fix their compensation; and to promote and discharge such officers, employees, and agents ... [and] ... [t]o do all things necessary or convenient to carry out the powers granted by this act or other acts," 35 Pa.Cons.Stat. Ann. § 1680.205, the court held this was insufficiently specific to confer the right to hire employees for a time certain. The court stated:

> Making contracts with its employees, affording them guarantees of continuity in their employment, is notably absent in the list of enunciated powers. Because of the long tradition of at-will public employment, it must be assumed that when the legislature speaks, it does so explicitly, and if, in their wisdom, it chose to grant tenure to the PHFA employees, it would have enacted an appropriate provision.

*Id.* at 472.

Enabling legislation for the Redevelopment Authority was interpreted the same way by the United States District Court for the Eastern District of Pennsylvania in

*Banks v. Redevelopment Authority,* 416 F.Supp. 72, 74 (E.D.Pa.1976). The court held that the Philadelphia Redevelopment Authority "had no power to create rules which would prevent dismissal at will." The district court holding was affirmed on appeal, 556 F.2d 564 (3d Cir.1977), *cert. denied,* 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 288 (1977). Compare: *Perri v. Aytch,* 724 F.2d 362, 364–66 (3d Cir.1983) (grant of authority found).

### Third Class City Charter Law

Lock Haven is a Pennsylvania Third Class City organized under the Optional Third Class City Charter Law (City Charter Law or the Act), 53 P.S. §§ 41101–41625. See: *Eichenlaub v. City of Lock Haven,* 84 Pa. Cmwlth. 139, 478 A.2d 551, 552 (1984).

General powers are conferred in sections 303, 304 and 305 of the Act. Section 303 grants cities organized thereunder the power to: "[o]rganize and regulate its internal affairs and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation...." 53 P.S. § 41303(1).

Section 304 of the City Charter Law expands upon the powers granted, stating:

> The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city.

53 P.S. § 41304. Section 305 limits the powers granted by the preceding sections. It provides that:

> Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:
>
> (1) Applicable to a class or classes of cities on the following subjects:
>
> . . . .
>
> (x) Relating to civil service.
>
> . . . .
>
> (2) Applicable in every part of the Commonwealth.
>
> (3) Applicable to all the cities of the Commonwealth.

53 P.S. § 41305.

The only reference which could be construed as authorizing a right to guarantee employment for a time certain is the general grant of authority found in section 303 to fix and establish offices and employments and to fix the "term, tenure and compensation," of such positions. 53 P.S. § 41303(1). Under the holdings in *Scott* and *Cooley* and their progeny, a general grant of authority to hire employees, fix and establish offices, etc., is not sufficient to confer the right to contract away Lock Haven's right to terminate an employment relationship at will.

Further, the section 305 prohibition against city ordinances regulating "civil service" matters would appear to conflict with an employment agreement guaranteeing employment for a time certain, 53 P.S. § 41305. Compare: *Greenberg v. City of Bradford,* 432 Pa. 611, 248 A.2d 51 (1968) (Section 305 does not bar such cities from enacting schedules of compensation for their policemen and its firemen, which differ from statewide minimum wage standards for policemen and firemen).

The protections afforded public employees in the Public Employee Relations Act (PERA), Pa.Stat.Ann. tit. 43, §§ 1101.101–1101.2301, would not seem to apply here. Although the parties did not address this issue in their briefs, our reading of PERA is that it deals exclusively and specifically with the right of public employers to enter into collective bargaining agreements, the right of public employees to organize, etc. See 43 P.S. § 1101.101. No collective bargaining agreement or related issue is raised here.

The civil service provisions of the Third Class City Code, Pa.Stat.Ann. tit. 53,

236

§§ 39401–39410, likewise appear to be inapplicable under the facts alleged, and plaintiff does not argue otherwise. In *Zeloyle v. Bettor,* 371 Pa. 546, 91 A.2d 901 (1952), the Pennsylvania Supreme Court held that, in third class cities, promotions to or demotions from officer status were not civil service matters as long as the demoted individual was not removed from the force. Accord: *Petrillo v. City of Farrell,* 345 Pa. 518, 29 A.2d 84 (1942). Compare: *Pavonarius v. City of Allentown,* 157 Pa.Cmwlth. 116, 629 A.2d 204 (1993) (plaintiff police officer had civil service tenure).

More to the point, any inference that such authority was conferred by the provisions conferring authority generally, is undercut by section 37002 of the Optional Charter Law which provides that:

The mayor shall designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified. **The chief of police shall be designated by the mayor and may be demoted without cause in the same manner, but not to any rank lower than the rank which he held at the time of his designation as chief of police.**

53 P.S. § 37002 (emphasis added). See also: Penna. Const. art. VI, § 7 ("Appointed civil officers ... may be removed at the pleasure of the power by which they have been appointed."). Any inference drawn by this court that the legislature directly or indirectly conferred on Third Class Cities the right to retain the services of a Chief of Police for a time certain would be directly contrary to section 37002.

In short, we are unaware of any provisions in the Act or elsewhere in Pennsylvania law which confer on Lock Haven the right to hire a Chief of Police for a time certain and the statutes which we have reviewed support the opposite conclusion.

We, therefore, find that Lock Haven acted beyond its power by contractually limiting its right to summarily terminate plaintiff's employment as Chief of Police. Because it was *ultra vires,* the employment agreement was void and unenforceable from the outset and cannot serve to confer on plaintiff a property

interest in continuing employment as Chief of Police. See: *Falls Township v. McManamon,* 113 Pa.Cmwlth. 504, 537 A.2d 946 (1988).

**Equitable estoppel unavailable**

██ Under other circumstances, it would seem that the doctrine of equitable estoppel would apply to bar the city from asserting as a defense the unenforceability of its own contract. However, the Pennsylvania Commonwealth court has held that:

To apply the doctrine of equitable estoppel against a governmental agency, it must have intentionally or negligently misrepresented some material fact and induced a party to act to his or her detriment, knowing or having reason to know the other party will justifiably rely on the misrepresentation.

*Bolduc,* 618 A.2d at 1191, citing *Foster v. Westmoreland Casualty Co.,* 145 Pa.Cmwlth. 638, 604 A.2d 1131 (1992).

Other courts have questioned *Bolduc*'s suggestion that equitable estoppel could be asserted against a public employer under any circumstance, have expressed skepticism that the Pennsylvania Supreme Court would endorse such a holding, have criticized *Bolduc*'s endorsement of the equitable estoppel doctrine as *dicta,* or have declared outright that Pennsylvania law does not "recognize equitable estoppel as an exception to the at-will employment doctrine," rendering it unavailable to plaintiffs seeking to uphold a public employment contract. *Williams v. Philadelphia Housing Authority,* 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd without pub'd opin.,* 27 F.3d 560 (3d Cir.1994), citing *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346, 348 (1990); *Andrew v. Lemmon Pharmacal Co.,* 767 F.Supp. 657, 659 (E.D.Pa.1990); and *Carlson v. Arnot–Ogden Memorial Hospital,* 918 F.2d 411, 416 (3d Cir.1990). *Stumpp v. Stroudsburg Municipal Authority,* 166 Pa.Cmwlth. 554, 646 A.2d 734, 737 (1994) (dissent) (criticizing *Bolduc* statements as dicta), *appeal granted,* 539 Pa. 661, 651 A.2d 546 (1994).

Whichever view we adopt, the result is the same here. Even if we accept the court's statement in *Bolduc* as something more than dicta, there are no allegations of intentional

or negligent misrepresentation of a material fact inducing Shoemaker to act to his detriment, *Bolduc*, 618 A.2d at 1191.

Based on the foregoing, we find that plaintiff had no property interest in remaining Chief of Police.

### Plaintiff's Substantive Due Process Claim

 Plaintiff asserts a substantive due process claim under the Fourteenth Amendment[2] (Count II). Substantive due process protects individuals "from the arbitrary exercise of the powers of government," *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) but only in cases in which the plaintiff can establish a property interest in the right or interest allegedly denied him on arbitrary and irrational grounds. Adapted from *Midnight Sessions Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir.1991).

Our finding that plaintiff had no property interest in remaining Chief of Police bars his assertion of a viable substantive due process claim. The substantive due process claim asserted in Count II will be dismissed on that ground.

### Plaintiff's procedural Due Process claim

 Plaintiff's procedural Due Process claim asserted in Count III fails on the same ground. To establish a procedural due process claim, a plaintiff must prove that state or local government "infringed a property interest encompassed by the Fourteenth Amendment". *Midnight Sessions*, 945 F.2d at 678, citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). See also: *Robertson v. Fiore*, 62 F.3d 596, 601 (1995) and *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1398–99 (3d Cir.1991) (limiting protected property interest to claims of legal entitlement, dependence, or permanence).

**2.** The Due Process Clause of the Fourteenth Amendment provides that: "nor shall any State deprive any person of life, liberty, or property, without due process of law;...." U.S. Const. amend. XIV.

**3.** The only reference to the Fifth Amendment readily apparent to the court is in paragraph 6 of plaintiff's complaint. None of the counts which

Plaintiff's inability to establish a property interest in remaining Chief of Police bars his assertion of a procedural due process claim.

### Pennsylvania Local Agency Law

 Shoemaker's claim under the Pennsylvania Local Agency Law fails on the same ground. A right to the procedural protections afforded by the Local Agency Law is also contingent on establishing a property interest in continued employment. *Ditzler Appeal*, 63 Pa.Cmwlth. 233, 437 A.2d 1071 (1981).

 To invoke the protections of the Act, the plaintiff must establish that there was an "adjudication." An "adjudication" is defined as:

> [A]ny final order, decree, decision, determination or ruling by a local agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles or pardons.

2 Pa.Cons.Stat.Ann. § 101. See also: *Roth v. Borough of Verona*, 74 Pa.Cmwlth. 352, 460 A.2d 379 (1983) and *Hardee's Food Systems v. Department of Transportation*, 495 Pa. 514, 434 A.2d 1209 (1981).

Here, as we have already discussed, plaintiff had no property interest in remaining Chief, and remained in that position at will, despite promises to the contrary in the employment agreement. Count V will therefore be dismissed.

### Plaintiff's Fifth Amendment Claim

 Plaintiff's Fifth Amendment claim is subject to dismissal on another ground as well.[3] The Fifth Amendment provides that

defendants move to dismiss specifically invokes rights guaranteed by the Fifth Amendment. The substantive and procedural due process rights invoked in Counts II and III are asserted under the due process clause of the Fourteenth Amendment.

We nonetheless address defendants' motion to dismiss any claims grounded on the Fifth Amendment to avoid any confusion as to the

"No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The due process clause applies only to the acts of the federal government. *Vassallo v. Clover, Division of Strawbridge & Clothier*, 767 F.Supp. 651, 653 (E.D.Pa.1990). It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees. *Heinly v. Queen*, 146 F.R.D. 102, 109 (E.D.Pa.1993) and *Huffaker v. Bucks County District Attorney's Office*, 758 F.Supp. 287, 290 (E.D.Pa.1991).

■ Rights guaranteed by the Fifth Amendment are not incorporated into the Fourteenth where, as here, such rights, if they exist, can be asserted directly under the Fourteenth Amendment.

### Plaintiff's equal protection claim

■ Plaintiff's equal protection claim asserted in Count II fails on other grounds. The essence of an equal protection claim is disparate treatment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990), quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir.1989) (en banc). See also: *Charles v. Baesler*, 910 F.2d 1349, 1356–57 (6th Cir.1990) and *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir.1983).

■ There is nothing in the complaint to suggest that plaintiff is a member of any minority or class which has historically been the object of discrimination. He cannot, therefore, prevail on an equal protection claim.

Other courts have held, in situations similar to that alleged here, that no equal protection violation existed. See, e.g., *Henry*, 922 F.2d at 341 (fact that plaintiff was singled out for investigation and discipline by government employer because of his union membership did not state equal protection claim); *Charles*, 910 F.2d at 1356–57 (failure to promote fire captain did not violate his equal

protection rights where plaintiff failed to show that government employer or his supervisors administered contractual promotion system with a discriminatory intent or purpose—Plaintiff's "equal protection claim boils down to the assertion that 'he was treated one way and everyone else another,' which 'has never been thought to raise an equal protection claim.' *Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir.1985) ... [Plaintiff] ... may be correct in arguing that the government and its officials in fact singled him out due to their sloppy administration of the contractual promotion system and their misapplication of state and local law. Such negligence is a far cry, however, from intentional invidious discrimination."); and *Huebschen* (male employee did not state equal protection claim against female supervisor where he alleged that supervisor had sexually harassed him and terminated his one-year probation to a supervisory promotion after their affair went sour).

The equal protection claim alleged in Count II will, therefore, be dismissed.

### Plaintiff's conspiracy claim

■ Plaintiff asserts a conspiracy claim in Count IV under section 1983, not section 1985, as assumed by defendants in framing their argument for dismissal. The facts alleged are sufficient at this stage to support a claim that defendants conspired to violate plaintiff's First Amendment rights, the only constitutional claim which remains under today's decision.

Defendants' motion to dismiss Count IV will therefore be denied.

### Punitive damages

Defendants also move to dismiss plaintiff's demand for punitive damages. Accepting as we must, all allegations of fact in plaintiff's complaint as true, plaintiff's claim for punitive damages survives. The facts alleged are sufficient, at this stage, to support the claim.

claims dismissed, those remaining, and the grounds for dismissal.