Eugene BURNS, John Mutsko, Roy Plummer, Louis Beaujon, Ron Snyder and Evelyn Ardini,

v.

COUNTY OF CAMBRIA, PENNSYLVANIA, Cambria County Salary Board, Joseph P. Roberts, Ron Stephenson and T.T. Metzger, Jr., individually and as Commissioners of the Cambria County Board of Commissioners and Members of the Cambria County Salary Board, Robert McCormick, individually and as Cambria County Controller and Member of the Cambria County Salary Board, Thomas Burns, individually and as Acting Sheriff and Member of the Salary Board of Cambria County, Jay Roberts, individually and as Sheriff of

Cambria County, Laurel Crest Manor, Wendell P. Davis, individually and as Administrator of Laurel Crest Manor, and Jeffrey Saintz, individually and as the Personnel Director of Cambria County.

Jay Roberts, individually and as Sheriff of Cambria County, Appellant.

Nos. 91–3351, 91–3352, 91–3374 and 91–3377.

United States Court of Appeals, Third Circuit.

Argued Feb. 27, 1992.

Decided July 28, 1992.

against claims by deputy sheriffs and a state-employed paramedic who allege they were dismissed by the officials solely for their political activity in violation of their rights under the First Amendment. The defendants' motion for summary judgment on the grounds, *inter alia,* of qualified immunity, was denied by the district court. On interlocutory review of the district court's order, we address only the issue of qualified immunity.

## I.

### *Facts*

Dennis J. Clark (argued), Plunkett & Cooney, P.C., Pittsburgh, Pa., for Jay Roberts, appellant in No. 91–3351.

Thomas A. Livingston (argued), Pittsburgh, Pa., for Joseph Roberts, appellant in 91–3352.

Alex E. Echard, Mount Pleasant, Pa., for County of Cambria, Cambria County Salary Bd., Ron Stephenson, T.T. Metzger, Jr., Cambria County Bd. of Comm'rs, Robert McCormick, Cambria County Controller, Laurel Crest Manor and Jeffrey Saintz, Personnel Director, appellants in No. 91–3374.

Calvin John Webb, II (argued), Dino S. Persio, Smorto, Persio, Zadzilko, Sibert, Webb & Milliron, Ebensburg, Pa., for Thomas Burns, appellant in No. 91–3377.

Williams C. Andrews, Lee V. Price, Michael L. Brungo (argued), Maiello, Andrews & Price, Pittsburgh, Pa., for appellees John Mutsko, Roy Plummer, Louis Beaujon and Evelyn Ardini.

David R. Johnson, Thomason, Rhodes & Cowie, Pittsburgh, Pa., for appellee Wendell P. Davis.

Before SLOVITER, Chief Judge, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This appeal presents the question whether county officials have qualified immunity

Defendant Jay Roberts was elected Sheriff of Cambria County, Pennsylvania, in December 1985. It is undisputed that on January 2, 1986, the Cambria County Salary Board, which consisted of defendants County Commissioners Joseph Roberts, Ron Stephenson, T.T. Metzger, Jr., County Controller Robert McCormick, and former Acting Sheriff Thomas Burns, voted to remove deputy sheriffs Eugene Burns, John Mutsko and Roy Plummer from the payroll of Cambria County, along with Ron Snyder, a clerk-investigator in the County Public Defender's Office, at the direction of Sheriff-elect Roberts.[1] Upon taking office on January 6, 1986, Sheriff Roberts officially revoked their employment and did not call plaintiff Beaujon, who was a part-time, per diem, employee of the sheriff's office, to work again. Plaintiff Evelyn Ardini was fired in December 1985, by defendants Wendell Davis and Jeffrey Saintz from her job as a paramedic and coordinator of patient transportation for Laurel Crest Manor, a Cambria County Agency.

The plaintiffs alleged in their complaint that the dismissals were in retaliation for their failure to support Jay Roberts in the sheriff's election and/or their support of candidates who opposed him. Ardini, whose supervisor, William Tomallo, also ran against Jay Roberts in the election, testified in deposition that she was asked by Jay Roberts and his father Joseph Roberts to give them a list of the persons who telephoned Tomallo so they could know

---

1. The district court's opinion states that there was a unanimous vote by the Salary Board Members. The appellate briefs of several defen-

dants contend they were not present. That factual issue is not material to the matter before us.

who Tomallo's political backers were, and when she didn't come up with the list she was fired. The plaintiffs seek, *inter alia*, compensatory damages, punitive damages, and reinstatement.

The district court initially dismissed Counts II, III, and VI of the complaint.[2] On June 4, 1991, the district court granted summary judgment to all of the defendants as to Counts IV and V.[3] It also granted summary judgment for defendants against plaintiffs Snyder and Eugene Burns on all counts.[4]

At the same time, the court denied the defendants' motion for summary judgment as to the remaining plaintiffs' claim that the defendants had violated their rights under the First Amendment. *Burns v. County of Cambria*, 764 F.Supp. 1031 (W.D.Pa.1991). The court found that the right of public employees not to be discharged in retaliation for exercising their rights under the First Amendment was clearly established. *Id.* at 1036. The court found that there was a material issue of fact as to whether the plaintiffs' political activities were substantial or motivating factors for their discharge. *Id.* at 1037. Finally, in considering the qualified immunity defense of the two Roberts defendants, the court held that they were not entitled to qualified immunity as a matter of law. *Id.*

## II.

### Appellate Jurisdiction

### A.

### Preservation of Issue in the District Court

 Defendants Jay Roberts, Joseph Roberts, Thomas Burns, Ron Stephenson, T.T. Metzger, Jr., Robert McCormick, and Jeffrey Saintz have appealed the denial of summary judgment. We consider first the extent to which we can hear their appeal. Under the authority of *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the denial of summary judgment on grounds of qualified immunity is appealable under the collateral order doctrine. However, we have held that we will review a claim of qualified immunity only if it was raised in the district court. *See Brown v. United States*, 851 F.2d 615, 620 (3d Cir. 1988) (it would be "within our power ... [but] inappropriate" to address the issue of qualified immunity if the district court has not addressed it "even if the record provided a sufficient basis for its resolution"); *see also Chinchello v. Fenton*, 805 F.2d 126, 130 (3d Cir.1986).

It is clear from the record that both Sheriff Jay Roberts and Commissioner Joseph Roberts raised the issue of qualified immunity as a basis for their motions for summary judgment. There is no evidence, however, that any of the other defendants did. The defendants claim that they incorporated the Roberts's qualified immunity defense into their own motions for summary judgment at oral argument in May 1990, but fail to point to any particular place in the record to substantiate that claim. Significantly, in a memorandum order continuing the trial pending the interlocutory appeal of the two Roberts defendants, the district court specifically stated that the other defendants had not raised qualified immunity in connection with their summary judgment motions. The court stated "that neither the notes of the Court

---

**2.** The court held that these counts, which alleged violations of 42 U.S.C. §§ 1985(2), (3), 1986, and state law defamation, did not state a claim.

**3.** Count IV contained Ardini's claim of a procedural due process violation in connection with her dismissal. The district court held that Ardini, as an at-will employee under state law, had no property right in her employment. Count V contained Ardini's claim of sex discrimination. The court held there was no supporting evidence.

**4.** The court held, *inter alia*, that Snyder, who had a criminal record, was disqualified under state law from holding the position of deputy sheriff, and that Eugene Burns, who himself ran for Sheriff against Jay Roberts, could have reasonably been viewed as a threat to the proper operation of the Sheriff's office for that reason. Neither of these plaintiffs is before us on this appeal.

nor its law clerk, present at argument on the motions, include any such incorporation." App. at 117. The defendants have offered nothing to contradict the district court's finding that such incorporation never took place. Our independent review of the record has also failed to locate any motion or incorporation of qualified immunity by these other defendants.

In an attempt to salvage their appeal, these defendants direct us to other defenses they raised in support of their summary judgment motions. For example, in Burns's motion he argued that the Sheriff had the sole statutory right to revoke the appointments of plaintiffs; Burns also argued that there is no evidence to establish that he engaged in conduct that deprived anyone of rights, privileges, or immunities secured by the Constitution or laws of the United States. Similarly, the other defendants claimed that each of them was powerless to terminate sheriff's deputies.

■ In order to determine whether these assertions constituted a defense of qualified immunity, we must decide whether defendants were simply "attempt[ing] to show only that [they] did not engage in the conduct of which [the] plaintiff[s] complain[ ]," Chinchello, 805 F.2d at 131 (also known as the "I didn't do it" defense), or whether defendants "can accurately be described as [contending] that [they] violated no clearly established legal norm." Id. Unlike in Chinchello, where the defendant based his summary judgment motion on the "legal proposition that the alleged failure to adequately train ... even if true, did not constitute a breach of clearly established legal norms," id., the claims by the non-Roberts defendants were that they were not responsible for firing the plaintiffs. They did not claim that even if they had fired the plaintiffs, that action would not have violated the plaintiffs' clearly established constitutional rights. Only the latter contention would have invoked the qualified immunity defense. The former statement is simply the "I didn't do it" defense and therefore not cognizable as an assertion of qualified immunity.

Consistent with our prior prudential rulings, we decline to exercise jurisdiction over the appeals of defendants Stephenson, Metzger, McCormick, Burns, and Saintz. We note in passing, however, that the qualified immunity claim of these defendants would not differ in substance from that which we do address hereafter.

### B.

### The Effect of Prisco

There is one other preliminary matter. The rationale for the Supreme Court's holding in Mitchell on the appealability of an order denying a motion for summary judgment on the grounds of qualified immunity was that qualified immunity provides protection not only against liability for money damages but also against standing trial. 472 U.S. at 524–30, 105 S.Ct. at 2814–17. The Court left open the question whether the denial of qualified immunity is also an appealable collateral order when the plaintiff states a claim not only for damages but also for injunctive relief. Id. at 519 n. 5, 105 S.Ct. at 2812 n. 5.

■ In Prisco v. U.S. Dept. of Justice, 851 F.2d 93 (3d Cir.1988), cert. denied, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989), this court held that because qualified immunity does not apply to claims for prospective relief, the denial of a motion for summary judgment based on qualified immunity was not appealable as an interlocutory order when the plaintiffs assert a claim for prospective relief. We explained that

[t]he marginal benefit to a governmental official from an interlocutory review of a ruling that proof of damages should not be heard is so slight that it cannot outweigh the systemic harms from permitting piecemeal interlocutory review of discrete issues in a case which, even against that official, will be ongoing.

Id. at 96. However, we entertained the appeal of one defendant in Prisco who was no longer a public official because the requested injunctive and declaratory relief did not apply to him, and thus decided the relevant issues.

The parties in this case did not raise the *Prisco* issue, but we must review our own jurisdiction. Therefore, we directed the parties to submit letter briefs addressing the effect of *Prisco* on our ability to review the appellants' claims.

Commissioner Roberts correctly points out that nine other circuits have disagreed with our analysis in *Prisco* and have allowed interlocutory appeals from denials of summary judgment on the qualified immunity defense even when the plaintiffs requested injunctive relief as well as damages. For example, in *Scott v. Lacy,* 811 F.2d 1153–54 (7th Cir.1987) (per curiam), the court relied on the rationale behind *Mitchell* to allow an appeal of a qualified immunity defense when injunctive relief was still pending. The court stated that

> [a]s a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all. The suit seeks relief against him in his official capacity; he need not attend the trial.... If he leaves office during the interim, he leaves the case behind.... The "right not to be tried" pertains to the request for damages alone, for that is the source of the distraction. Moreover, if a request for an injunction prevented appeal on the question of immunity, plaintiffs who wished to harass officials to travail would need only demand equitable relief, defeating the defendants' opportunity to obtain prompt review.

*Id.* at 1153–54; *see also Marx v. Gumbinner,* 855 F.2d 783, 787 (11th Cir.1988) (emphasizing difference from government official's perspective between standing trial on claim for money damages and for injunctive relief); *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 717–18 (10th Cir.1988) (noting that government officials are at risk of personal liability and punitive damages, and may incur expense of hiring private counsel). *Accord DiMartini v. Ferrin,* 889 F.2d 922, 924–25 (9th Cir.1989), *amended on other grounds,* 906 F.2d 465 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991); *Giacalone v. Abrams,* 850 F.2d 79, 84–85 (2d Cir.1988); *Young v. Lynch,* 846

F.2d 960, 961–63 (4th Cir.1988); *Drake v. Scott,* 812 F.2d 395, 398 (8th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Kennedy v. City of Cleveland,* 797 F.2d 297, 305–06 (6th Cir. 1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1188–90 (1st Cir.1986).

Despite our own dissatisfaction with the *Prisco* rule, as a panel of three judges we are bound to follow our circuit's precedent. *See* Internal Operating Procedures, United States Court of Appeals for the Third Circuit, Rule 9.1. A recent opinion from this court voiced similar concerns, but also felt bound to apply *Prisco. See Schrob v. Catterson,* 967 F.2d 929, 940 (3d Cir.1992). It follows that because Sheriff Jay Roberts would remain a defendant in his official capacity to plaintiffs' claims for reinstatement, we do not have appellate jurisdiction at this time to review the denial of his qualified immunity defense.

It was, however, brought to our attention through counsel's letter briefs that Commissioner and Salary Board Member Joseph Roberts retired on January 6, 1992 and is no longer a Cambria County Official. Thus, like former Attorney General William French Smith, who was a defendant in *Prisco* but had ceased to be a public official, Commissioner Roberts is a defendant "only for the purpose of obtaining money damages from him," *Prisco,* 851 F.2d at 97, and can appeal from the order denying his motion for summary judgment on qualified immunity grounds. His, therefore, is the only appeal properly before us. We note, however, as we did concerning the appeals of the defendants who did not raise qualified immunity to support their motions for summary judgment in the district court, Jay Roberts's contentions do not differ in substance from those of Joseph Roberts, so that our continued adherence to *Prisco* will not prevent us from considering the qualified immunity defense.

As to Joseph Roberts's appeal, we exercise plenary review over the "purely legal" question presented. *Lee v. Mihalich,* 847 F.2d 66, 67 (3d Cir.1988).

## III.

### Discussion

### A.

### Applicable Constitutional Right

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court enunciated the two-part, objective test for qualified immunity:

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738.

The "constitutional right of which a reasonable person would have known" which plaintiffs invoke in this case is the First Amendment's prohibition of the dismissal of public employees from their jobs solely because of their partisan political affiliation. *Branti v. Finkel*, 445 U.S. 507, 517–20, 100 S.Ct. 1287, 1294–96, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 360–73, 96 S.Ct. 2673, 2683–89, 49 L.Ed.2d 547 (1976) (plurality opinion); *Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir.1991). In *Elrod*, the Court held that the dismissal of a "nonpolicymaking, nonconfidential government employee" for that reason was unconstitutional as a severe restriction on political belief and association. 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring in judgment). As the Court stated in *Connick v. Myers*, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983), "official pressure upon employees to work for political candidates not of the workers' own choice constitutes a coercion of belief in violation of fundamental constitutional rights." [5]

Justice Brennan's plurality opinion in *Elrod* found a "presumptive prohibition" against patronage dismissals [6] and put the burden on the defendant to demonstrate that party affiliation "further[ed] some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights." *Id.* at 360–63, 96 S.Ct. at 2683–84.

In *Branti*, the Court reformulated the test and held that

> the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1295.

Commissioner Roberts suggests that the political dismissal of deputy sheriffs is not a violation of the First Amendment because that position is one that falls within the exception for those for whom "party affiliation is an appropriate requirement for the effective performance of the public office

---

**5.** *Connick* is representative of a somewhat distinct line of First Amendment cases arising out of the public employee's right to comment on matters of public interest. In those cases, the courts must balance the citizen's right to comment upon public affairs and the public employer's interest in promoting efficiency in public services by controlling whom it employs. *See Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Zamboni v. Stamler*, 847 F.2d 73 (3d Cir.), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988). The inquiry in those cases generally focuses on whether the speech concerned a matter of public concern and whether it caused unacceptable internal disruption. In *Connick* the Court held that the speech in question should not be characterized as an employee grievance concerning internal office policy and thus found no First Amendment violation. Of interest here, however, was the Court's statement that it is "apparent that the issue of whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the community." 461 U.S. at 149, 103 S.Ct. at 1691.

**6.** The Court recently extended the application of *Branti–Elrod* to promotions, transfers, recalls, and hiring decisions. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, ——, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990). This brings the allegations of plaintiff Beaujon, who was a per diem employee of the sheriff's office, within the scope of *Branti–Elrod.*

involved." [7] The burden to show the application of such an exception is on the defendants. As the *Branti* Court stated,

> unless the government can demonstrate "an overriding interest," "of vital importance," requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment.

445 U.S. at 515–16, 100 S.Ct. at 1293 (citations omitted) (quoting *Elrod*, 427 U.S. at 368, 362, 96 S.Ct. at 2684); *see also Zold*, 935 F.2d at 635 ("The burden of proof is on the defendant to demonstrate 'an overriding interest' in order to validate an encroachment on an employee's First Amendment rights." (quoting *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687)).

In *Branti* the issue was whether assistant public defenders could be fired by an incoming Public Defender solely for their political party affiliation. The Court found that assistant public defenders did not fit into the category of those for whom party affiliation may be relevant since their responsibility was to represent individuals against the State. Premising their job tenure on party affiliation, the Court found, would undermine, not promote, their job performance. *Branti*, 445 U.S. at 519–20, 100 S.Ct. at 1295–96.

The defendant has a "substantial burden of demonstrating that political affiliation is an appropriate requirement for the effective performance of the deputy [sheriff]." *Zold*, 935 F.2d at 640. We look foremost at the "function of the public office in question." *Brown v. Trench*, 787 F.2d 167, 168 (3d Cir.1986); *see also Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir.1986) (en banc) (threshold inquiry of whether position relates to " 'partisan political interests' " followed by inquiry into "particular responsibilities of the position" (quoting *Branti*, 445 U.S. at 519, 100 S.Ct. at 1295)), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

In making the *Branti–Elrod* analysis, we have held that *Branti*'s protection does not extend to an assistant director of public information, *Brown*, 787 F.2d at 168 (3d Cir.1986); assistant district attorneys, *Mummau v. Ranck*, 531 F.Supp. 402, 404 (E.D.Pa.1982), *aff'd*, 687 F.2d 9 (3d Cir. 1982) (per curiam); and city solicitors and assistant city solicitors, *Ness v. Marshall*, 660 F.2d 517, 522–23 (3d Cir.1981). *See* Susan Lorde Martin, *A Decade of Branti Decisions: A Government Official's Guide to Patronage Dismissals*, 39 Am. U.L.Rev. 11, 23–48 (1989) (listing cases from other circuits).

All counsel in their briefs and during oral argument agreed that deputy sheriffs in the Cambria County Sheriff's office primarily perform three tasks: they serve process; they transport prisoners to and from court and between facilities; and they provide security for courtrooms. Roberts contends that party affiliation is related to job performance inasmuch as a sheriff must be assured of the loyalty and confidentiality of his deputies and he has a strong interest that everyone in his department "get along," particularly since the sheriff's office is small.

We cannot say as a matter of law that party affiliation would further the effective performance of these tasks. In *Elrod*, one of the plaintiffs was the chief deputy of the process division, presumably more of a policymaking position than one who simply serves process, and he was held entitled to First Amendment protection. 427 U.S. at 350, 96 S.Ct. at 2678 (plurality opinion); 375, 96 S.Ct. at 2690 (Stewart, J., concurring). The defendants have offered no reason why the political alignment between the deputy sheriffs and the sheriff is relevant to the deputies' duties in serving process, transporting prisoners, or guarding courtrooms.

Nor is it apparent why the small size of the sheriff's office, a factor defendants stress, makes partisan affiliation a

---

7. Commissioner Roberts's brief is sparse, primarily directed to the "I didn't do it" defense. However, because Commissioner Roberts incorporated the arguments of his co-defendants into his appellate brief as permitted by Fed.R.App.P. 28(i), we will treat his co-defendants' arguments as his own for the purpose of this appeal.

relevant factor. In *Branti*, there were only nine assistant public defenders but the Court held that they enjoyed First Amendment protection. Although loyalty and confidentiality of sheriff's deputies are desirable attributes, those traits are needed for many working relationships. It has never been suggested that the need for loyalty and confidentiality alone supports politically motivated dismissals independent of the tasks which the employee must perform. *See Elrod*, 427 U.S. at 367, 96 S.Ct. at 2687.

This case stands in contrast to *Brown v. Trench*, where we held that the Assistant Director of Public Information for Bucks County would perform her duties of writing press releases and acting as spokesperson for elected county Commissioners most effectively if she shared the Commissioners' political beliefs, 787 F.2d at 170, and *Ness v. Marshall*, where we held that because the mayor relied on city solicitors to perform functions "intimately related to city policy, the mayor has the right to receive the complete cooperation and loyalty of a trusted adviser." 660 F.2d at 522. Here, there is no evidence that the sheriff himself performs any policy making function or that he relies on his deputies for any policy-type duties.

■ Nor does the sheriff's position as an elected official justify the political dismissal of his potential substitute. In *Furlong v. Gudknecht*, 808 F.2d 233 (3d Cir.1986), we found that because politics was inapposite to the duties of the elected Recorder of Deeds, the possibility that the Second Deputy Recorder could occupy the Recorder's position was not dispositive of the question of the relevance of party affiliation to the position. *Id.* at 236–37. Similarly, the possibility that the Chief Deputy may succeed to the Sheriff's position does not alone justify requiring their political alignment.

Other courts have reached similar results. In *Jones v. Dodson*, 727 F.2d 1329 (4th Cir.1984), the court, after noting that the *Branti* Court "[f]latly rejected . . . any

general notion that mutual trust and confidence could only exist between members of the same political party," held that the duties of the deputy sheriffs did not implicate " 'partisan political interests.' " *Id.* at 1338 (quoting *Branti*, 445 U.S. at 519, 100 S.Ct. at 1295); *see also Barrett v. Thomas*, 649 F.2d 1193, 1201 (5th Cir.1981) (Unit A) (holding that in large department, "the absence of political cohesion between sheriff and deputy can hardly be said to undermine an intimate working relationship"), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); *Francia v. White*, 594 F.2d 778 (10th Cir.1979) (deputy sheriffs in non-policymaking positions who were adequately performing their jobs protected under *Elrod*). *Contra Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir.1991) (because of "autonomy and discretionary authority" exercised by deputy sheriffs, political considerations were justified in employment decisions), *cert. denied*, —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir.1989) (affirming dismissal of claims by former deputy sheriffs that they were dismissed for political reasons).[8]

In short, on the basis of the record, which fails to show that Cambria County deputy sheriffs enjoy significant autonomy or discretion in their jobs or that their political activities are relevant to their duties, we hold that Roberts has failed to demonstrate that firing deputy sheriffs for their political affiliation or activities comes within the narrow exception for political dismissals recognized in *Branti* and *Elrod*. As for plaintiff Ardini, a paramedic and coordinator of patient transportation for a Cambria County agency, the defendants have raised no arguments as to how her job falls under the exception to the prohibition against patronage dismissals. Commissioner Roberts does claim that he did not have the power to dismiss Ardini but, as noted *supra*, that is not an issue we address in this limited review.

---

**8.** Significantly, the court reversed the dismissal of the claims of jailers and process servers who were also employed by the Sheriff's office, tasks which in Cambria County are performed by deputy sheriffs.

## B.

### Clearly Established Standard

 Roberts argues, however, that it was not clearly established at the time of these dismissals that deputy sheriffs, as distinguished from other public officials, were indeed protected under the *Branti–Elrod* line of cases, and therefore he is still entitled to qualified immunity. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court delineated the "clearly established" standard:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted).

This court has " 'adopted a broad view of what constitutes an established right of which a reasonable person would have known.' " *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 726 (3d Cir.1989) (quoting *Sourbeer v. Robinson,* 791 F.2d 1094, 1103 (3d Cir.1986), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 779 (1987)), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). In *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144–45 (3d Cir.1984), we held that there does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established," and we would not be "faithful to the purposes of immunity by permitting ... officials one liability-free violation of a constitutional or statutory requirement." *Cf. Jones,* 727 F.2d at 1336 (noting that exception to prohibition against patronage dismissals is "extremely narrow").

This court has already observed that it was "clearly established" by 1982, before the events in this case, that public employees could not be fired for their political affiliation. In *Bennis v. Gable,* 823 F.2d 723 (3d Cir.1987), we stated that it was clearly established that public officials could not be demoted for their political associations:

> we cannot, in good conscience, conclude that in 1982 a reasonably active politician would not have believed that it would be impermissible to demote an employee in retaliation for his political speech and/or associations.... [A]s of 1982 the law was "clearly established" that a public employee could not be demoted in retaliation for exercising his rights under the first amendment.

*Id.* at 733. One could hardly contend that the rule was otherwise as to dismissals.

Roberts relies on the opinion of the Seventh Circuit in *Upton,* which held that it was not "clearly established" that deputy sheriffs had a right to be free from political firing. 930 F.2d at 1217. We note that one of the bases for the *Upton* court's decision was its perception of the difficulty that courts have had in applying *Branti–Elrod* and "the failure of the courts to develop and apply a consistent set of principles concerning patronage dismissals." *Id.* at 1213.

We have not tracked the early development of the *Branti–Elrod* cases in the Seventh Circuit, but we are satisfied that the decisions of this court have been sufficiently consistent to have clearly established to all state and municipal employers that firing or other adverse employment action for political reasons contravenes the Constitution unless defendants could show that the particular position came within the narrow exception. We see no reason why any reasonable employer would have thought deputy sheriffs, whose work consisted of serving process, transporting prisoners, and guarding courtrooms, could be fired for political reasons.

We also note that, for the purposes of determining whether a right is "clearly established," the court must look to the status of the law at the time of the challenged actions. *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816; *Lee,* 847 F.2d at 71. Thus,

the defendants could not have been relying on *Upton* or *Terry* because these cases were decided after the plaintiffs were dismissed from their jobs. On the other hand, *Jones* and *Barrett,* which held that deputy sheriffs were protected by *Branti–Elrod,* were decided in 1984 and 1981 respectively, before the incidents that gave rise to this case.

Although plaintiff Mutsko was acting chief deputy sheriff at the time of his dismissal, he testified in his deposition, and Roberts has not disputed, that the only difference between being a chief deputy and a deputy was the pay scale. Thus, although Mutsko was "in charge" when the acting sheriff was away, his duties remained purely ministerial, involving only assigning deputies to courthouses and following court orders, and therefore there would have been no reasonable basis for distinguishing between him and his colleagues.[9]

Accordingly, we hold that Commissioner Roberts "should have related this established law to the instant situation," *Hicks v. Feeney,* 770 F.2d 375, 380 (3d Cir.1985), because it was clearly established in January 1986 that the plaintiffs, deputy sheriffs and a paramedic, could not be dismissed from their jobs for failure to support Jay Roberts in his bid for sheriff or work in his political campaign. It follows that Roberts could not have been objectively reasonable in participating in the political firing of the plaintiffs. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40 (under appropriate circumstances, the issue of defendant's reasonable beliefs can be determined as a matter of law).[10]

Of course, our conclusion that as a matter of law Roberts is not entitled to qualified immunity does not prevent Roberts and his co-defendants from raising other defenses at trial. *See Stoneking,* 882 F.2d at 731. They can deny their involvement in the dismissals (the 'I didn't do it' defense referred to above), or they can claim that the dismissals were justified on other grounds. *See Mt. Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Jones,* 727 F.2d at 1335. These issues remain for the trier of fact.

## IV.

### *Conclusion*

For the foregoing reasons, we hold that it was clearly established by 1986 that Cambria County sheriffs' deputies and paramedics were protected under the First Amendment from patronage dismissals. We will affirm the district court's denial of defendant Joseph Roberts's motion for summary judgment on the grounds of qualified immunity, and dismiss the appeals of the remaining defendants.

---

**9.** We note that Mutsko was the acting chief deputy sheriff because the chief deputy was elevated to acting sheriff after the death of the sheriff. Thus, after Sheriff Roberts's election, Mutsko may only have had a legitimate expectation of remaining as a deputy sheriff, not as the chief deputy sheriff.

**10.** Patently, the fact that deputy sheriffs serve at the pleasure of the sheriff, 16 Pa.Stat.Ann. § 1205, and the legal opinion obtained by Sheriff Roberts from the Cambria County Personnel Office stating that he had statutory authority to

hire and fire deputies without "just cause," cannot justify dismissal from public employment for an unconstitutional reason. *See Perry v. Sinderman,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972).

Our conclusion that the applicable law was clearly established distinguishes *Lee v. Mihalich,* 847 F.2d 66 (3d Cir.1988), on which defendants rely. In *Lee,* we found that the relevant provision of Pennsylvania law was unsettled at the time, and thus the defendants were reasonable in relying on a legal opinion to bring the prosecution for which they were being sued.