**Walter T. PETERS, Jr.**

v.

**DELAWARE RIVER PORT AUTHORITY OF PENNSYLVANIA AND NEW JERSEY.**

**Civ. A. No. 91–6814.**

United States District Court,
E.D. Pennsylvania.

Dec. 11, 1992.

**14**

Thomas J. Duffy, Philadelphia, PA, for plaintiff.

Mark J. Schwemler, Elliott, Bray & Riley, Blue Bell, PA, for defendant.

## MEMORANDUM

BARTLE, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983.[1] Plaintiff Walter T. Peters, Jr. ("Peters") alleges that the defendant Delaware River Port Authority of Pennsylvania and New Jersey ("DRPA") has infringed his constitutional rights of freedom of belief and association, by failing to reappoint him as its Secretary solely because he is a member of the New Jersey Republican Party.[2] At the conclusion of discovery, the parties filed cross motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] The issue before the Court is whether party affiliation is a constitutionally acceptable requirement for the position of Secretary of the DRPA.

The DRPA is an agency of Pennsylvania and New Jersey, formed by Compact between these two states and formally approved by Congress.[4] 36 P.S.A. § 3503; N.J.S.A. 32:3-1 et seq. (the "Compact"). The DRPA was created in 1931, among other things, to operate and maintain the bridges owned jointly by Pennsylvania and New Jersey across the Delaware River and between the cities of Philadelphia and Camden. Under the Compact, DRPA has authority to construct and maintain facilities for the transportation of passengers, to improve and develop the Port District for port purposes, and to promote commerce on the Delaware River. It may also establish, maintain, and operate a rapid transit system between certain points in New Jersey and Pennsylvania (Compact, Art I).

The DRPA is governed by a sixteen member Board of Commissioners, eight of

---

1. 42 U.S.C. § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. Defendant previously filed a motion to dismiss alleging that DRPA was an "arm or instrumentality of the state, possessing Eleventh Amendment immunity from suit in federal court." In the alternative, defendant moved for summary judgment, and requested that the Court strike plaintiff's claim for punitive damages. In its decision of March 4, 1992, 785 F.Supp. 517, this Court denied defendant's motion to dismiss, holding that DRPA was not an arm or instrumentality of the state for Eleventh Amendment

purposes. We also denied the motion for summary judgment, on the grounds that there existed, at that point in the case, a genuine issue of material fact concerning the nature and duties of the position of Secretary. However, we granted defendant's motion to strike the claim for punitive damages.

3. Rule 56(c) provides that:

   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

4. Art. I, § 10, cl. 3 of the Constitution provides:

   No State shall, without the Consent of Congress ... enter into any Agreement or Compact with another State.

whom are appointed by the Governor of New Jersey for periods of five years. The Governor of Pennsylvania appoints six of the commissioners for five year terms, with the elected Auditor General and the elected State Treasurer of Pennsylvania filling the remaining two positions for their four year terms. All commissioners, other than the Pennsylvania Auditor General and State Treasurer, continue to hold office after the expiration of their terms and until their successors are appointed and qualified (Compact, Art. II). The Board of Commissioners is empowered to elect various officers including a Secretary and Treasurer (Compact, Art. IV). The Bylaws of the DRPA further provide that the Board is to elect the Secretary for a two year term.

Peters became an officer of the DRPA when the Board of Commissioners elected him as Secretary on October 20, 1989 to fill a vacancy. However, the Board did not reappoint him when his term ended on January 20, 1991. Peters, a New Jersey Republican, claims that he was not retained because the commissioners wanted the position for an individual affiliated with the New Jersey Democratic Party. The person who succeeded Peters as Secretary is in fact a Democrat.

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court struck a blow at the time honored system of political patronage. The Court's plurality opinion concluded that it is generally a violation of the First Amendment right of freedom of belief and association for a public employer to fire an employee on the basis of political affiliation.[5] Subsequent cases have extended *Elrod* protection to situations involving demotion, transfer and failure to reappoint based on political affiliation. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The *Elrod* plurality declared, however, that some party based dismissals would be permissible in order to

protect the ability of an administration to implement its policies as mandated by the electorate. *Elrod* at 367, 96 S.Ct. at 2687. The plurality carved out an exception for policy making employees or employees in a position of confidence, placing the burden on the defendant to show that party affiliation "further[s] some vital government end by a means that is least restrictive of freedom of belief and association ..." *Id.* at 360–63, 96 S.Ct. at 2683–85.

In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574, the Supreme Court, in a majority opinion, altered the test for determining which positions are excepted from the general rule against patronage dismissals. Under *Branti*, the test is not whether an employee can be labeled a "policy maker," or "confidant," but whether "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 519, 100 S.Ct. at 1295. The Court reasoned that "a position may be appropriately considered political even though it is neither confidential nor policy making in character." Conversely, the court observed that "party affiliation is not necessarily relevant to every policy making or confidential position." *Id.* Thus, although the extent and breadth of an employee's responsibilities may be instructive, they are not determinative.

Following *Branti*, the Court of Appeals of this Circuit affirmed that the crucial question is whether affiliation with a political party is somehow related to effective job performance. In *Burns v. County of Cambria*, for example, 971 F.2d 1015 (3d Cir.1992) the Court of Appeals held that the positions of deputy sheriff and clerk investigator were protected from patronage dismissal. The court explained that the mere fact that a position requires loyalty and confidentiality does not automatically validate politically motivated dismissals. *Id.* at 1022–23. Rather, in order to qualify for the exception, an employee's duties

---

**5.** The First Amendment provides:
Congress shall make no law ... abridging the freedom of speech, or of the press; or the

right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

must "relat[e] to '*partisan* political interests.'" *Id.* at 1022 (emphasis added) (citations omitted). In *Mummau v. Ranck,* 531 F.Supp. 402, 404 (E.D.Pa.1982) the court described the inquiry as a "functional analysis of the individual's position with an eye to determining whether it is likely that party affiliation could cause plaintiff, a public official, to be ineffective in carrying out his duties and responsibilities." There, the court upheld the dismissal of Lancaster County Assistant District Attorneys based on political affiliation, finding that their responsibilities implicated important governmental policies, and entailed the duty to represent the interests of the Commonwealth. *See also Zold v. Township of Mantua,* 935 F.2d 633 (3d Cir.1991).

Defendant asserts that the position of Secretary entails broad policy making and confidential duties which place it within the *Elrod–Branti* exception to the general rule prohibiting patronage dismissals. Article III, Section (D) of the Bylaws of the DRPA details the duties of Secretary as follows:

> The secretary, reporting to the executive director, shall be the custodian of all records and the seal of the authority and shall keep accurate minutes of the meetings of the authority and all of the committees thereof. He shall, on behalf of the authority certify, when required, copies of the records, and shall execute legal instruments and documents on behalf of the authority when ordered to do so, and affix the seal of the authority to the same, *and shall perform such other duties as may be directed by the authority.* (emphasis added)

According to the DRPA, it took advantage of the ability to direct the Secretary to perform "other duties," creating a position with wide ranging authority and responsibilities. The DRPA relies on the official description of the position promulgated by the Board of Commissioners in 1983. This document charges the Secretary with, among other things: reviewing correspondence, reports, communications and sources of information and making appropriate recommendations to the Executive Director of the DRPA; assisting in planning for the improvement and expansion of DRPA facilities, operations, organization and management; participating in high-level DRPA matters with Commissioners, committees, staff, public officers, and other public bodies; attending the executive sessions of the DRPA as requested and participating in all policy-forming discussions during executive sessions of the DRPA; acting as liaison and maintaining good public relations with other agencies and representing the Executive Director with other public agencies and members of the public; assisting the coordination of operational divisions and staff at the DRPA; and interpreting and executing DRPA policy.

Plaintiff contests defendant's characterization of the position, asserting that it is primarily ministerial in nature. He points out that the position, as described in the Bylaws, is entirely ministerial and that all the functions which allegedly entailed policy making are additional duties delegated pursuant to the "extra duties" clause. He further asserts that those "extra duties" do not establish that he had meaningful input into decisions concerning the nature and scope of major programs, or that his affiliation was likely to cause plaintiff to be ineffective in carrying out his duties and responsibilities. Plaintiff relies on testimony from the Chairman, Vice Chairman and Executive Director of the DRPA, all of whom stated that plaintiff's political affiliation had no bearing on his ability to perform his job.

In any event, even if the defendant's description of the position of Secretary is accurate, plaintiff contends that the bistate nature of the DRPA mandates that the functions of the Secretary be carried out in an non-political manner. We agree. As explained above, in order for a dismissal based on party affiliation to be appropriate, the position must implicate party politics. *Burns v. County of Cambria,* 971 F.2d 1015; *Zold v. Township of Mantua,* 935 F.2d 633. The duties of the Secretary cannot involve partisan political interests, for the simple reason that the Secretary does not serve an organization designed to further the political agenda of any one elected administration or officeholder. As ex-

plained above, the DRPA is a creature of both New Jersey and Pennsylvania. Fourteen of the sixteen commissioners are appointed by the Governors of Pennsylvania and New Jersey who may be of different political parties. Furthermore, the remaining two positions on the board are filled by the independently elected Auditor General and State Treasurer of Pennsylvania. The authors of the Compact sought to prevent either state from ever obtaining dominance over the other. Thus, the Compact provides not only equal state representation but also requires that all actions must be passed by a majority of the representatives of each state rather than by a simple majority of Board (Compact, Art. III). Under this scheme, the Secretary of the DRPA necessarily must be loyal to DRPA as a whole and not to either state or to any particular commissioner. If anything, the nature of the position compels the conclusion that the Secretary must be non-political to serve effectively in light of the potentially divergent interests of two different states, two different gubernatorial administrations, and the independently elected Auditor General and State Treasurer of Pennsylvania.

Defendant cites several cases in order to demonstrate that the Third Circuit has applied the *Elrod–Branti* exception to positions which allegedly entailed far less responsibility than that of the Secretary of the DRPA including, for example, a city solicitor, *Ness v. Marshal*, 660 F.2d 517 (3d Cir.1981), an assistant district attorney, *Mummau v. Ranck*, and an assistant director of public information, *Brown v. Trench*, 787 F.2d 167 (3d Cir.1986). Under *Branti*, however, the extent of an employee's responsibilities, while instructive, is not controlling. In all the cases cited by defendant, the discharged employees served in one state or municipal administration or under one elected official, with a mandate from the voters to advance that administration's or official's agenda. In *Ness v. Marshal*, for example, the court concluded that the Mayor of York could dismiss the city solicitor and assistant city solicitors on the basis of their political affiliation because such solicitors act as advisors to the city. They render legal opinions, draft ordinances, and negotiate contracts. The court explained that the Mayor, "has the right to receive the complete cooperation and loyalty of a trusted adviser" in these sensitive areas. *Id.* at 522. In drawing this conclusion, the court stated that the appropriate test is whether "a difference in party affiliation [would] be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office." *Id.* In contrast, it is difficult to see how any *"difference* in political affiliation" of a Secretary of the DRPA would hinder the ability of the DRPA to carry out its mandate.

Finally, the DRPA focuses on the provision of the Bylaws that the Secretary is elected for a two year term. DRPA argues that this provision evidences the intention of the legislatures of Pennsylvania and New Jersey to provide the Commission with "high level Officers that are philosophically and politically aligned with the governing administrations" (Defendant's Brief at 13). However, the fact that a position is subject to a term limitation does not necessarily validate dismissals based on party affiliation. For example, in *Zold v. Township of Mantua*, 935 F.2d 633, the court held that the position of deputy township clerk was protected from patronage dismissals although it was subject to reappointment after one year. Similarly, in *Furlong v. Gudknecht*, 808 F.2d 233 (3d Cir.1986) the court held the *Elrod–Branti* exception inapplicable to the position of the Second Deputy Recorder of Deeds for Bucks County, which was subject to reappointment every four years.

The Court's decision here will not unduly hamper the ability of DRPA to obtain loyal employees, dedicated to carrying out its policy. Nothing precludes an employer from discharging an employee for actual disloyalty, insubordination, or for failure faithfully to fulfill assigned duties or to further whatever policy the commission sets. As Justice Stevens pointed out in *Branti*, "[t]o the extent that petitioner lacks confidence in the assistants he has inherited from the prior administration for

some reason other than their political affiliations, he is of course free to discharge them." *Branti,* 445 U.S. at 520, 100 S.Ct. at 1296.

In invoking the *Elrod–Branti* exception, the defendant bears the burden of establishing how affiliation with a particular party is important to the job. In this case, defendant has shown only that plaintiff may be involved in policy making decisions, and may be privy to confidential information. Under *Branti* and its progeny, DRPA must do more than demonstrate the extent of its Secretary's responsibilities. Defendant has not shown how affiliation with a particular political party can be an important element of the job. Accordingly, the DRPA may not dismiss or fail to re-elect its Secretary based on his or her political affiliation.

Because no genuine issue of material fact exists, plaintiff's motion for partial summary judgment will be granted and defendant's motion for partial summary judgment will be denied.