# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 01-31469
Summary Calendar

_____

BRIAN PAUL DESORMEAUX,

Plaintiff-Appellee,

VERSUS

SHERIFF'S OFFICE CAMERON PARISH, ET AL.,

Defendants,

JAMES R. SAVOIE,
IN HIS CAPACITY AS SHERIFF OF CAMERON PARISH LOUISIANA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
m 01-CV-685

_____

August 1, 2002

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The district court found that Deputy Brian Desormeaux had created a fact question as to whether Sheriff James Savoie had fired him in violation of his "clearly established" First Amendment rights to free expression and association. Savoie appeals, arguing that he should be able to use political allegiance as an employment criterion for hiring investigators. Because we previously have rejected this argument, we affirm the denial of Savoie's motion for summary judgment on the personal capacity claims. Because the district court has not yet entered a judgment, we lack appellate jurisdiction over the claims against Savoie in his official capacity.

I.

From 1997 to 2000, Desormeaux worked as one of four investigators for Savoie. Investigators occupy one of the top six positions among the thirty-four deputies; only the sheriff, chief deputy, and chief investigator are higher.

Desormeaux alleges that Savoie refused to renew his employment in June 2000 because he mistakenly believed that Desormeaux had supported his opponent in an election. Desormeaux provided summary judgment evidence to support his allegations: In September or October 1999, Savoie informed a deputy that he suspected Desormeaux was supporting his opponent, and instructed a deputy to investi-

gate whether that was so. Savoie learned that one of Desormeaux's relatives supported his opponent. After Desormeaux's termination, the sheriff informed a staff member that he had learned that Desormeaux voted for his opponent. Savoie never gave Desormeaux a reason for his discharge. Desormeaux avers that he did not actually support Savoie or his opponent.

Desormeaux sued under 42 U.S.C. § 1983, alleging that the discharge violated his First Amendment rights to freedom of speech and association; he also pleaded related state law claims. The complaint originally named the "Cameron Parish Sheriff's Department" as a defendant, but the district court found that no such entity existed under Louisiana law and dismissed the department as a defendant. Desormeaux amended his complaint to clarify that he was suing Savoie in his individual and official capacities.

Savoie moved for summary judgment, seeking dismissal of the federal claims on the basis of qualified immunity. He sought dismissal of the claims against him in his official capacity because no counterpart governmental entity exists. The court denied summary judgment, and Savoie appeals.

II.

Savoie argues that *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), set forth the exclusive test for patronage discharges. He avers that the Supreme Court's public employee expression cases, most notably *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), have no relevance. He further claims that *Elrod* and *Branti* permit elected officials to use political affiliation and loyalty as employment criteria

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

for employees who make important policy decisions or handle confidential information. *See Branti*, 445 U.S. at 518.

## A.

Determining whether an official should receive qualified immunity requires answering three questions. First, did the plaintiff allege the violation of a constitutional right? *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Second, did the public official breach "clearly established statutory or constitutional rights of which a reasonable person would have known?" *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The applicable law must be clearly established when the allegedly actionable conduct was taken. *Harlow*, 457 U.S. at 818. Finally, "we must determine whether . . . the record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999) (quotation and citation omitted).

For purposes of this appeal, Savoie concedes Desormeaux's factual claims. We review the remaining legal questions *de novo*. *Geter v. Fortenberry*, 882 F.2d 167, 169 (5th Cir. 1989).

## B.

In a series of three cases, the Supreme Court has outlined the proper framework for analyzing a public employee's claim that he was fired for his political views. In *Elrod*, a fractured Court held that an Illinois sheriff could not fire non-civil service employees for failing to support him in a bid for reelection. 427 U.S. at 367 (Brennan, J.) (plurality). Justice Stewart's concurrence emphasized that the employees did not occupy a policymaking position or routinely review confidential information. *Id.* at 374-75 (Stewart, J., concurring).

Four years later, a majority agreed on more specific standards. In *Branti*, 445 U.S. at 519, the Court refined Justice Stewart's hint of an exception permitting elected officials to discharge public employees for their political beliefs, explaining that the label "policymaker" or "confidential" should not determine whether political affiliation is a necessary job requirement. *Id.* "[R]ather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.*

In *McBee v. Jim Hogg County, Tex.*, 730 F.2d 1009 (1984) (en banc), we laid out rules for deciding political patronage cases in the wake of *Elrod* and *Branti*. We explained that the two cases represented a special subset of the Supreme Court cases regulating a public employee's discharge for speech on matters of public concern. *Id.* at 1014. We opined that *Elrod* and *Branti* were especially easy public official speech cases that required little or no weighing under the traditional test. *Id.* The employees were loyal and effective, were discharged for private and abstract political views, and did not actively campaign. *Id.*

The description of *Elrod*'s and *Branti*'s implications for pure association cases, however, was only *dictum*. In *McBee*, because the deputy sheriffs had actively campaigned against their employer, *id.* at 1015, we explained that we would employ the flexible *Connick-Pickering* test laid out for public employee expression cases, *id.* at 1016. We will consider whether the speech is on a matter of "public concern," the need for a close working

relationship, the disruptiveness of the activity, and the appearance of insubordination or hostility. *Id.* at 1017.[1]

In *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 726 (1996), the Court tracked the distinction between mere affiliation and political expression and held that a mayor could not constitutionally terminate the city's referrals to a private towing company because the company had refused to donate to his campaign and actively supported his opponent. For the first time, the Court addressed the complex relationship between the tests outlined for firing a public employee based on political affiliation and political expression. *Id.* at 719. The Court explained that where the case solely involves an association

or affiliation claim, *Elrod* and *Branti* control. The Court ruled, however, that in mixed cases of retaliation based on both affiliation and expression, courts will almost inevitably have to apply the test for public employees' expression. *Id.*

Savoie argues that *O'Hare* supplanted the test we described in *McBee*. Savoie, however, fails to explain why any minor theoretical differences between *McBee*'s and *O'Hare*'s respective *dictum* describing the requirements for pure association claims should affect the outcome in this case. Desormeaux presented summary judgment evidence that Savoie believed him to be actively supporting the opponent. Savoie discriminated against Desormeaux on the basis of his perceived associations *and* expressions.[2] We apply the *Connick-Pickering* balancing test to mixed cases. *O'Hare*, 518 U.S. at 719; *supra* note 1. Savoie concedes that, at this stage in the proceedings, Desormeaux has created a fact question about the unconstitutionality of his discharge under the *Connick-Pickering* balancing test.

### C.

Savoie argues that he lawfully fired Desormeaux because investigators fall within the *Elrod-Branti* exception for public employees in policymaking positions. In *Matherne v. Wilson*, 851 F.2d 752, 761 (5th Cir. 1988), we held that Louisiana sheriffs could not constitutionally discharge investigators for

---

[1] We have consistently performed the *Connick-Pickering* balancing where public employees have both belonged to opposing political parties and actively expressed their support for opposing candidates. *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 990, 995-96 (5th Cir. 1992) (en banc) (explaining that public employee had published letter in support of candidate and spoken to many citizens about his support, and describing *Elrod-Branti*'s exception as interrelated with *Connick-Pickering* analysis); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("When a plaintiff's claims arise under both freedom of speech and freedom of association . . . the freedom of association cases are analyzed under the same *Pickering* balancing test used to determine the success of the freedom of speech claims."); *Brady v. Fort Bend County*, 145 F.3d 691, 704-05 (5th Cir. 1998) (campaigning by deputy sheriffs placed case in the middle of the spectrum and required explicit *Connick-Pickering* balancing); *Click v. Copeland*, 970 F.2d 106, 112-13 (5th Cir. 1992) (announcing candidacy for sheriff's office requires application of *Connick-Pickering* balancing test).

[2] Precedent supports classifying the case according to the elected official's perceptions rather than to the plaintiff's actual activity. *Branti*, 445 U.S. at 509 n.4 (noting that one of the plaintiffs had changed his political party to coincide with the elected officials but basing decision on the elected officials' perception).

political reasons. In *Matherne*, as in this case, the investigator had superiors in the chain of command, the sheriff offered zero evidence that the investigator's political opinions skewed his professional judgment, and the sheriff did not argue that the investigator's political opinions impaired his working relationships. *Id.*[3]

Savoie does not explain how *O'Hare* would change the outcome in *Matherne*, and he does not distinguish *Matherne*. *Matherne* binds us and compels the conclusion that Desormeaux has created a fact question about whether his First Amendment rights to association and expression were violated.

### D.

Finally, we consider whether Desormeaux's rights were "clearly established" in June 2000. Savoie argues that although the Fifth Circuit had repeatedly classified deputy sheriffs as falling outside the *Elrod-Branti* exception, other circuits had divided over the question.[4]

He argues that the dissenting views of other federal circuits are enough to make a right not "clearly established."

Savoie is incorrect; the divergent views of the other courts of appeals do not affect established law in this circuit, and a public official cannot use them, standing alone, to establish the qualified immunity defense.[5] In June 2000, our cases "clearly established" that a Louisiana sheriff could not discharge an investigator for political reasons.

### II.

Savoie argues that the district court erred by refusing to dismiss the claims asserted against him in his official capacity. We have a duty to consider our appellate jurisdiction before reaching the merits of the district court's refusal to dismiss the official capacity claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

---

[3] *See Brady*, 145 F.3d at 709 (finding, in mixed case, that Texas deputy sheriffs did not fall within *Elrod-Branti* exception); *Click*, 970 F.2d at 112 (finding that Texas deputy sheriffs who ran against sheriff could not fall within *Elrod-Branti* exception because there was no proof candidacy had interfered with their job); *Barrett v. Thomas*, 649 F.2d 1193, 1200 (5th Cir. Unit A July 1981) (same).

[4] *Compare, e.g., Jenkins v. Medford*, 119 F.3d 1156, 1162 (4th Cir. 1997) (en banc) (classifying political allegiance as an appropriate requirement because deputies play such a critical role in implementing sheriff's policies); *and Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir. 1991) (holding that sheriff may consider politics when deciding whether to hire or fire chief deputy), *with*
(continued...)

---

[4](...continued)
*Burns v. County of Cambria*, 971 F.2d 1015, 1023 (3d Cir. 1992) (finding deputy sheriffs may not be discharged for political beliefs without some proof that they had significant discretion or their political views affected their decisionmaking).

[5] *Brady*, 58 F.3d at 175 n.11 ("While it seems peculiar to consider an official action held lawful by one federal circuit court to be 'clearly' unconstitutional by any 'objective' criteria, such a result reinforces the finality of circuit law, albeit at the expense of immunity in some cases."); *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 748 (5th Cir. 1993) ("Our inquiry ends, if we find from examining the decisions of the Supreme Court and our own decisions that the law was clearly established in this circuit."). *See Click*, 970 F.2d at 110-11 (holding "[t]he law was established clearly enough in this circuit" despite a conflict with two circuits).

The collateral order doctrine creates appellate jurisdiction over a denial of official immunity, because the defendant's immunity to suit is effectively sacrificed if the case goes to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526-28 (1985). To fall within the scope of the collateral order doctrine the order "must conclusively determine the disputed question, resolve an important question completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

The collateral order doctrine does not extend to official capacity claims. The Supreme Court has explained that the collateral order does not encompass the district court's rejection of a local government's defense to liability. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995). Local governments do not have immunity from suit, and appellate courts may adequately review the denial of summary judgment after a full-blown trial. *Id.* Official capacity claims really create liability for the local government, and, in the wake of *Swint,* we have held that we lack jurisdiction over "official capacity" claims against a Louisiana sheriff before the district court has entered a final judgment.[6]

The denial of summary judgment based on official, qualified immunity is AFFIRMED, and the appeal in all other respects is DISMISSED for want of appellate jurisdiction.

_____

[6] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000) ("And since a suit against Sheriff Daniel in his official capacity is a suit against the Parish, we may not review the Magistrate Judge's denial of summary judgment regarding Sheriff Daniel in his official capacity."); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 476 (5th Cir. 1999) ("The district court's order denying the Sheriff's motion for summary judgment in the 'official capacity' suit does not satisfy *Cohen*'s requirement that the decision be effectively unreviewable after final judgment.").